+

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| LARRY MCMILLAN; AND HAROLD MCMILLAN; | |
| Plaintiff, | |
| v. | Civil Action No.: 1:12-cv-301 |
| COMMONWEALTH LAND TITLE INSURANCE COMPANY; | |
| Defendant. | |

## COMPLAINT OF LARRY MCMILAN AND HAROLD MCMILLAN AGAINST COMMONWEALTH LAND TITLE INSURANCE COMPANY

Come now the Harold McMillan and Larry McMillan (hereinafter "Plaintiffs" or the "McMillans") in the above styled cause of action and files its Complaint with Exhibits attached thereto as follows:

### Statement of Parties and Jurisdiction

1.    At all material times herein, Plaintiff, LARRY MCMILLAN, is an adult resident of Tennessee and, at all material times herein, owned an interest in property located in Baldwin County, Alabama.

2.    At all material times herein, Plaintiff, HAROLD MCMILLAN, is an adult resident of Alabama and, at all material times herein, owned an interest in property located in Baldwin County, Alabama.

3.    Defendant COMMONWEALTH LAND TITLE INSURANCE COMPANY ("Commonwealth" or "Defendant") is a foreign corporation in the business of selling insurance

and at all material times herein, and did in fact sell title insurance in the State of Alabama.

4.      At all times material herein, Commonwealth was acting through its employees, agents, representatives and/or assigns, and such persons were acting in the line and scope of their employment or agency with Commonwealth.

5.      Jurisdiction lies in this Court pursuant to 28 U.S.C. §1332. The parties entered into a contract of insurance involving real property in Baldwin County, Alabama. The parties are of diverse citizenship and the value of Plaintiff's claims exceeds $75,000.00.

## Statement of Facts

6.      The transactions mentioned herein regarding Larry McMillan, Harold McMillan and Cypress Village were a part of a larger series of land transactions, which had transpired earlier around April 29, 2004, involving 84 Canal Place, L.L.C. ("84 Canal"), Cypress Village Development Co., L.L.C. ("Cypress Village"), Cypress Village Commercial Development Co., L.L.C. ("Cypress Village Commercial"), Gulf Coast Properties, Inc. ("Gulf Coast") and Anchor Title, L.L.C. ("Anchor Title"). At that time, Gulf Coast had conveyed to 84 Canal a larger portion of the subject real property (which encompassed lots 98, 99 101 and 102 of Harold McMillan, Larry McMillan and Southern Food) by Vendors Lien Deed for the unpaid balance of the purchase price in the amount of Two Million Thirty Eight Thousand Five Hundred Ninety-Eight Dollars and Fifty-Nine Cents ($2,038,598.59). That Vendors Lien Deed was recorded as Instrument No. 807360 in the Probate Records of Baldwin County, Alabama. A true and correct copy of said Vendors Lien Deed is attached hereto, incorporated by reference and marked as "**Exhibit 1**."

7.      On or about January 25, 2005, 84 Canal conveyed a 14.824 acre parcel to Cypress Village, which was recorded as Instrument No. 869056 (and correction Warranty Deed dated

February 14, 2006, recorded as Instrument No. 956878) in the Probate Records of Baldwin County, Alabama.

8.      At or about the time of the January 25, 2005, conveyance of the 14.824 acre parcel from 84 Canal to Cypress Village via the instruments indicated above, 84 Canal requested from Gulf Coast a payoff necessary to release the 14.824 acre parcel from the Vendors Lien held by Gulf Coast. Upon belief and upon testimony from Anchor Title, its agents had full knowledge that a partial release from the Gulf Coast Vendors Lien was supposed to have been delivered by Gulf Coast in exchange for a payment in the amount of $100,000.00. Anchor Title prepared a Closing Statement, which did not indicate any Vendors Lien or that a partial payment would occur. See Settlement Statement attached and marked as **"Exhibit 2."**

9.      On or about January 25, 2005, Cypress Village executed in favor of Harold McMillan, a note secured by a mortgage on the lot described as Lot 98 of the Cypress Village Subdivision, said mortgage being recorded as Instrument No. 8695058 and corrected by document recorded as Instrument No. 962488 in the records of the Office of the Judge of Probate of Baldwin County, Alabama.  The mortgage as corrected was to secure the payment of indebtedness of Cypress Village to Southern Food.  A copy of the Mortgage to Harold McMillan is attached hereto as "**Exhibit 3**."

10.     As a result of the preceding transactions, and as of the date of the filing of this Compliant, Harold McMillan has an encumbered mortgage interest in Lot 98, Cypress Village Subdivision.

11.     Warren, Larry McMillan, Harold McMillan and Southern Food incorporate by reference the preceding paragraphs above, as though fully set forth herein.

12.     On or about January 25, 2005, Cypress Village executed in favor of Larry

McMillan, a note secured by a mortgage on the lot described as Lot 99 of the Cypress Village Subdivision, said mortgage being recorded as Instrument No. 869057 and corrected by document recorded as Instrument No. 962489 in the records of the Office of the Judge of Probate of Baldwin County, Alabama.  The mortgage as corrected was to secure the payment of indebtedness of Cypress Village to Larry McMillan.  A copy of the Mortgage to Larry McMillan is attached hereto as **"Exhibit 4."**

13.     As a result of the preceding transaction, and as of the date of the filing of this Complaint, Larry McMillan has an encumbered mortgage interest in Lot 99, Cyrpress Village Subdivision.

14.     Warren, Larry McMillan, Harold McMillan and Southern Food incorporate by reference preceding paragraphs above, as though fully set forth herein.

15.     At or about the time of the January 25, 2005, conveyance of the 14.824 acre parcel from 84 Canal to Cypress Village via Instrument Nos. 869056 and 956878.  84 Canal requested from Gulf Coast a payoff necessary to release the 14.824 acre parcel from the Vendors Lien held by Gulf Coast.  On information and belief, Anchor Title represented to 84 Canal that a partial release from the Gulf Coast Vendors Lien would be delivered by Gulf Coast in exchange for a payment in the amount of $100,000.00. Based on said representation, Anchor Title prepared a Closing Statement reflecting a $100,000.00 payment to Gulf Coast and indentifying said payment as "Partial Release of Mortgage; Gulf Coast Prop." (See Settlement Statement attached and marked as **"Exhibit 2."**)

16.     Anchor Title was supposed to have wired the sum of $100,000.00 to Gulf Coast of January 25, 2005, with said funds having been accepted and retained by Gulf Coast.

17.     Despite the delivery to Gulf Coast of the sum of $100,000.00, and Gulf Coast's

receipt and retention thereof, Gulf Coast either (a) gave a partial release of the 14.824 acre parcel, which Commonwealth's agent, Anchor Title, failed to record in the Baldwin County Probate Records; or (b) failed- to give the partial release as promised. In either instance, Anchor Title failed to notify the McMillans of the problem.

18.     Warren, Larry McMillan, Harold McMillan and Southern Food incorporate by reference the preceding paragraphs above, as though fully set forth herein.

19.     Larry McMillan, as owner of a mortgage interest in Lot 99 (the lots were later corrected and re-numbered and the policy issued by Commonwealth actually states Lot 107), purchased a policy through Commonwealth's agent, Anchor Title, policy number G32-2143512. The policy is attached as "**Exhibit 5.**"

20.     Harold McMillan, as owner of a mortgage interest in Lot 98 (the lots were later corrected, re-numbered and the policy issued by Commonwealth actually states Lot 106), purchased a policy through Commonwealth's agent, Anchor Title, policy number G32-2143520. The policy is attached as "**Exhibit 6**".

21.     Counsel for Larry McMillan and Harold McMillan sent correspondence to Commonwealth putting it on notice of the pending foreclosure and the lawsuit filed in Baldwin County. The correspondence generally put Commonwealth on notice and updated regarding the status of the Baldwin County action. Further, they notified Commonwealth of the attempts to foreclose the parcels again on or around December 2008. (See correspondence and email generally attached as **"Exhibit 7."**

22.     Commonwealth acknowledged the history of the claim, that it received notice and an opportunity to defend, but denied the claim of Larry McMillan on May 3, 2010. The May3, 2010, letter is attached as **"Exhibit 8."** The letter did not specifically reference Harold

McMillan, however, a March 9, 2010, email from Commonwealth's counsel indicated that the McMillans' claims would be would be address together and that a decision would be coming soon. (See "**Exhibit 9**"). The denial indicated that the McMillans were not parties to the litigation pending in Baldwin County and that it would not intervene in that action.

23.     Commonwealth ultimately retained counsel for the McMillans and Southern Foods and intervened in the action in Baldwin County around March 3, 2011.

24.     The Commonwealth insurance policy insured against, among other things, loss or damage by reason of "[a]ny defect in or lien or encumbrance on the title…[and] unmarketability of the title…." See Exhibits 6 & 7.

25.     Further, in a letter dated May 5, 2010, counsel for the Vendors Lien holder made an offer to release parcels 98, 99, which was conveyed to Commonwealth. See May 5, 2010, correspondence attached as **"Exhibit 10."**

26.     As a result of Commonwealth's failure to honor the insurance contract or to provide an immediate defense or to provide an immediate effort to cure the defect in title upon notice, Harold McMillan and Larry McMillan were forced to incur substantial attorneys' fees associated with defending the Baldwin Circuit Court action, it lost business opportunities to sell the subject lots due to the defect in title. Further, Harold McMillan and Larry McMillan lost substantial sums of money in interest payments and capital improvements to the properties due to the defect in title, which Commonwealth has failed or refused to remedy. As a result of Commonwealth's breach, Southern Food has suffered consequential damages substantially in excess of the insured amount of the policy.

## <u>FIRST CAUSE OF ACTION</u>
### <u>(Breach of Contract)</u>

27.     The plaintiffs adopt and incorporate the previous allegations as though set forth

herein.

28.   Commonwealth breached the insurance policy with the McMillans as follows:

   a.   by failing to honor the insurance contract with plaintiffs;

   b.   by failing to provide coverage for a covered claim or event under the policy of insurance and failing in any way to indemnify or pay for the insurance claim submitted by plaintiffs;

   c.   by its failure to pay attorneys' fees and costs associated with the defense of plaintiffs' title;

   d.   by failing to cure the defect at the inception of the policy when its agent, Anchor Title had full knowledge of the defect in title and yet failed to disclose that fact to plaintiffs;

   e.   by selling the policy with knowledge of the defect;

   f.   by failing to disclose the defect in titled to plaintiffs; and/or

   g.   by otherwise failing to honor its coverages and Schedule A (coverage) to the insurance contract where no known exclusions or exceptions applied;

29.   As a consequence of Commonwealth's breach, plaintiffs suffered economic and consequential damages as a result of the breach.

WHEREFORE, Plaintiffs demands judgment against Defendant for compensatory damages, plus interest and costs, individually and jointly.

### SECOND CAUSE OF ACTION
**(Bad Faith)**

30.   Plaintiffs adopt and incorporate all previous paragraphs and allegations as though set forth herein.

31.   Commonwealth has refused and continues to refuse to provide any legitimate or arguable reason to deny plaintiffs' claim.

32.     Commonwealth has intentionally failed to provide any reasonable interpretation to the provisions in the policy of insurance or any reasonable application of such provision(s) to the claims made in the underlying case. Commonwealth has acted to protect its own financial interest at the expense of the plaintiffs' rights.

33.      Commonwealth has further failed to provide plaintiffs any lawful, reasonable or justifiable basis for denying the claim in relation to the insurance policy, the facts, or to applicable law.  And, further, Commonwealth had knowledge of that fact or intentionally failed to determine whether there was any lawful basis for its refusal to honor the contract.

34.     Said conduct constitutes bad faith on the part of Commonwealth.

35.     As a proximate consequence of Commonwealth's conduct, plaintiffs suffered economic and consequential damages including lost property, lost profits, lost interest payments on its debt, incurred costs and attorneys' fees, lost investment costs and capital improvement costs associated with its investment.

WHEREFORE, the premises considered, plaintiffs demand judgment against Defendant Commonwealth for compensatory damages and further seeks punitive damages pursuant to controlling law, individually and jointly.

### THIRD CAUSE OF ACTION
### (Abnormal Bad Faith)

36.     Plaintiffs adopt and incorporate the prior allegations as though set forth herein.

37.     Commonwealth committed the tort of Abnormal Bad Faith as recognized under Alabama law in that:

      a.     Commonwealth intentionally or recklessly failed to investigate plaintiffs' claim;

      b.     Commonwealth intentionally or recklessly failed to properly subject

plaintiffs' claim to a cognitive evaluation or review;

    c.    Commonwealth misrepresented the facts in its denial letter after notice of a potential sale;

    d.    Commonwealth created or manufactured a debatable reason to deny plaintiffs' claim; or

    e.    Commonwealth relied on an ambiguous portion of plaintiffs' policy as a lawful basis to deny plaintiffs' claim.

38.    Commonwealth intentionally and deceptively breached its contractual, fiduciary, and common law duties owed to plaintiffs as their insureds under Alabama law.

39.    Commonwealth has failed to provide Southern Food any reasonable or justifiable basis for denying the claim in relation to the insurance policy, the facts, or to applicable law.

40.    As a proximate consequence of Commonwealth's conduct, plaintiffs suffered economic and consequential damages including lost property, lost profits, lost interest payments on its debt, incurred costs and attorneys' fees, lost investment costs and capital improvement costs associated with its investment.

WHEREFORE, the premises considered, Plaintiffs demand judgment against Defendant Commonwealth for compensatory damages and further seeks punitive damages pursuant to controlling law, individually and jointly.

### PLAINTIFFS RESPECTFULLY DEMANDS A TRIAL BY JURY

Respectfully submitted,

TAYLOR MARTINO, P.C.,
Attorneys for the Plaintiff,

BY:  /s/ *W. Bradford Kittrell*
W. BRADFORD KITTRELL (KITW3444)
Post Office Box 894
Mobile, Alabama 36601
PH: 251/433-3131

**DEFENDANT MAY BE SERVED AS FOLLOWS:**

**VIA CERTFIED MAIL**

COMMONWEALTH LAND TITLE INSURANCE COMPANY
6601 Frances Street
Omaha, NE 68106